IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 19-90-BLG-SPW |
| Plaintiff, | ORDER |
| vs. | |
| MEREDITH McCONNELL, BARBARA MARY DAYCHIEF and SHERYL LYNN LAWRENCE, | |
| Defendants. | |

This matter comes before the Court on several motions filed by Defendant

Meredith McConnell including a Motion to Sever Defendant Lawrence (Doc. 95),

a Motion to Dismiss Counts I, II, and III of the Superseding Indictment (Doc. 96),

a Motion to Dismiss Count II of the Superseding Indictment (Doc. 97), a Motion to

Dismiss Count VIII of the Superseding Indictment (Doc. 98), a Motion to Strike

Surplusage in Superseding Indictment (Doc. 99), and a Motion to Dismiss Count

IV of the Superseding Indictment (Doc. 100). Defendant Daychief joins in

McConnell's Motions to Dismiss (Docs. 96, 97, 98) and Motion to Strike (Doc.

99). (Doc. 101). Defendant Lawrence similarly joins in McConnell's Motions to

Dismiss (Docs. 96, 97, 98) and Motion to Strike (Doc. 99). (Doc. 105). The United States opposes all of McConnell's Motions. (Doc. 109).

## I.      FACTUAL BACKGROUND

Meredith McConnell and Barbara Daychief were charged via a federal grand jury indictment on July 11, 2019 with Theft from a Program Receiving Federal Funds, Wire Fraud, False Claims, and Misprision of a Felony. (Doc. 1). Several months later, the grand jury issued a superseding indictment on January 9, 2020 adding Sheryl Lawrence as a defendant and dropping several charges. The Defendants are now charged with Theft from a Program Receiving Federal Funding (Count I), Wire Fraud (Count II), False Claims as to Defendant Lawrence (Count III), False Claims as to Defendant McConnell (Count IV), False Claims as to Defendant Daychief (Counts V-VII), and Misprision of a Felony (Count VIII). (Doc. 53).

The charges stem from several payments the Defendants received for trainings and business trips associated with the organization the Montana Native Women's Coalition ("MNWC"). The Superseding Indictment alleges that these payments were fraudulently induced by the Defendants as members of MNWC's board. Specifically, the Superseding Indictment states "[defendants] committed

and facilitated travel fraud, received travel payments on non-approved trips, including to Las Vegas, received and authorized double-payment for 'days in service,' authorized unapproved construction projects, and took and authorized other benefits that members of the Montana Native Women's Coalition were not allowed to approve and entitled to receive." (Doc. 53 at 6).

## II.   DISCUSSION

### a.  Motion to Sever Defendants

It is uncontroverted that the federal justice system prefers trying multiple defendants in a joint trial when those defendants are indicted together. *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Fed. R. Crim. P. 8(b) establishes that multiple defendants may be charged in a single indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." However, this preference is not without limits. Fed. R. Crim. P. 14 cautions that "[i]f it appears that a defendant or the government is prejudiced by a joinder of . . . defendants . . . for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." To warrant a severance, the moving party must meet a high bar of demonstrating "a serious risk

that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. An inconsistent or antagonistic defense strategy is not, in itself, sufficient to show prejudice *per se*. *Zafiro*, 506 U.S. at 538-39; *United States v. Mayfield*, 189 F.3d 895, 899-00 (9th Cir. 1999). Even if prejudice is found, the decision whether to sever the defendants or grant some other form of relief is left to the district court's discretion. *Zafiro*, 506 U.S. at 539.

McConnell argues that Defendant Lawrence must be severed from the present case because the evidence of Lawrence's other crimes would create a spillover effect robbing McConnell of a fair trial. McConnell believes that the jury would improperly consider the actions of MNWC in hiring Lawrence if evidence of her past crimes were presented before the panel. Additionally, McConnell raises fears that the United States' intent to introduce incriminating statements made by Lawrence in her sworn statement would raise *Bruton* concerns about the ability of McConnell to argue a proper defense. In support, the Defendant cites to two cases including a Ninth Circuit Court of Appeals case, *United States v. Mayfield*, where the Ninth Circuit found that the joint trial denied the defendant a specific trial right and prevented the jury from making a reliable judgment. 189 F.3d at 899.

4

The facts of *Mayfield* are distinguishable from the present case and do not convince the Court that severance is warranted at this time. In *Mayfield*, the defendant appealed the district court's denial of his motion to sever by pointing to the mutually exclusive defenses of the co-defendants and the actions of co-defendant's counsel at trial. The Ninth Circuit found that Mayfield's right to confront witnesses was denied when inculpatory statements from both a police informant and the co-defendant's confession were admitted, and Mayfield was denied the opportunity to cross-examine the individuals. *Id.*, 189 F.3d at 901.

Prior to trial, the parties had agreed not to introduce evidence obtained from the informant or any information provided to police by the informant. However, during co-defendant's cross-examination, counsel questioned the police officer about the facts forming the basis of the original search warrant including that Mayfield was a primary suspect, a "reliable" informant provided the information that Mayfield would be at the apartment, and that the police officer knew Mayfield from previous interactions. *Id.* The district court did not strike this information. *Id.* The district court also allowed an officer to testify about his recollection of the co-defendant's previous confession in which the co-defendant named Mayfield as the "main man" of the operation. Although Mayfield's name was redacted from the

5

testimony, the Ninth Circuit found that the combination of information solicited about the search warrant naming Mayfield as the primary suspect and the redacted confession describing how the co-defendant sold drugs for "an individual" created a context of inescapable inference in the minds of the jury. *Id.*, 189 F.3d at 902. Firmly compounding the inference, counsel for co-defendant made several references to Mayfield, without actually naming him, in her closing about how Mayfield was the main man in the drug operation and exercised control to intimidate the co-defendant. *Id.*

Here, the concerns of the *Mayfield* Court are not present, for one, because the trial has yet to occur and McConnell has failed to show how proper jury instructions would not resolve any potential prejudice. *United States v. Hanley*, 190 F.3d 1017, 1027 (9th Cir. 1999). The government has expressed a promise to prevent the admission of any statements from Lawrence directly implicating McConnell unless Lawrence were to take the stand. These properly redacted statements are admissible so long as they are redacted in such a manner to prevent any direct inference of accusation. *See Richardson v. Marsh*, 481 U.S. 200, 209 (1987); *Gray v. Maryland*, 523 U.S. 185, 194 (1998). However, should the government or counsel for a co-defendant inadvertently admit an improper

6

statement, limiting instructions are also available to the Court to ensure only admissible evidence is presented for the consideration of the jury. *United States v. Nelson*, 137 F.3d 1094, 1108 (9th Cir. 1998) (it is the burden of the party requesting a severance to demonstrate how limiting jury instructions would be insufficient to resolve concerns of prejudicial spillover evidence). Limiting instructions were notably refused during the *Mayfield* trial. *Mayfield*, 189 F.3d at 902-03. The Court is not convinced that the perceived prejudice cannot be cured by the means available to this Court through proper instructions or objections and sees no reason to sever the defendants at this time.

In joining McConnell's Motion to Sever, Daychief also raises concerns about a joint trial compromising the ability to subpoena potentially favorable testimony from a co-defendant. Daychief claims that if Lawrence were severed from the trial, both Daychief and McConnell would subpoena Lawrence to testify on their behalf. Daychief further asserts that "Lawrence's testimony would be favorable towards Daychief" on the issues of unauthorized construction projects and the benefits the members received from MNWC. (Doc. 118 at 3). However, "[w]hen the reason for the severance is the need for a codefendant's testimony, defendant must show that he would call the codefendant at a severed trial, that the

codefendant would in fact testify, and that the testimony would be favorable to the moving party." *United States v. Jenkins*, 785 F.2d 1387, 1393 (9th Cir. 1986). Daychief's generalized statements that she would call Lawrence as a witness and that Lawrence's testimony would be favorable are not enough to satisfy this burden. As explained in *Jenkins*, the moving party must proffer a detailed explanation of the expected testimony and how it would be favorable to the moving party's defense. Bare assertions of favorability are not sufficient. *Id.*, 785 F.2 at 1394.

For these reasons, McConnell's Motion to Sever is denied.

### b. Motion to Dismiss Counts I, II, and III of the Superseding Indictment

As an initial matter, McConnell's Motion lists Count I, II, and III that should be dismissed as duplicitous, but the supporting brief and argument make the claim that Counts I, II, and VIII should be dismissed as duplicitous. Count III charges Defendant Lawrence, not McConnell, with allegedly making a false claim to the Office on Violence Against Women. Count VIII charges McConnell, Lawrence, and Daychief with Misprision of a Felony. It appears that all other briefing on the topic, including the Government's response brief, Daychief's joinder response, and McConnell's reply brief, address the motion to dismiss argument in regard to

8

Count VIII. Therefore, the Court shall likewise address the motion to dismiss as concerning Counts I, II, and VIII only.

"An indictment is duplicitous when it joins two or more distinct and separate offenses into a single count." *United States v. Mancuso,* 718 F.3d 780, 792 (9th Cir. 2013). A reviewing court is limited to the language of the indictment itself when determining duplicity. In this regard, whether the evidence the government presents or intends to present may support a charge of one or several crimes is of no consequence. The court is "solely to assess whether the indictment itself can be read to charge only one violation in each." *Id.*

McConnell argues that the configuration of Counts I, II, and VIII, by supposedly listing multiple acts of fraud, will compromise jury unanimity as the jury may find that one of the allegedly fraudulent acts occurred but not that another has. McConnell further asserts that Count VIII (misprision of a felony) fails for lack of specificity in describing which felonies the co-defendants should have reported and failing to identify which felonies are tied to which co-defendant.[1] Finally, McConnell asserts that there was no unitary scheme tying all alleged

---

[1]McConnell also states that "[d]ouble jeopardy concerns are also possible," but does not elaborate further on what those specific concerns are or why they are possible. (Doc. 96-1 at 8).

9

activities under Count I (Theft from a Program Receiving Federal Funding) sufficiently together as part of the same fraudulent scheme.

The United States responds that the Counts are not duplicitous as wire fraud is a continuing offense in the Ninth Circuit and the Federal Rules of Criminal Procedure allow the Government to list more than one specified means by which the defendant committed the crime. The United States first points to *United States v. Pace*, 314 F.3d 344 (9th Cir. 2002), where the Ninth Circuit reviewed the statutory language of 18 U.S.C. § 1343 in order to determine whether venue was proper to charge a defendant with wire fraud. The *Pace* Court held that under the continuing offense definition contained in 18 U.S.C. § 3237(a), wire fraud was a continuing offense capable of constituting acts spanning space and time. *Pace*, 314 F.3d at 350. Additionally, the United States points to the language of Fed. R. Crim. P. 7(c) which states that "[a] count may allege that . . . the defendant committed [the offense] by one or more specified means." The United States lastly points out that even if concerns of duplicity did exist, any potential jury concerns could be resolved with a jury unanimity instruction. McConnell appears to admit as much in her motion to dismiss the counts.

10

The Court finds the Government correct in their argument and denies McConnell's Motion to Dismiss for Duplicitous Counts. It is Ninth Circuit precedent under *United States v. Pace*, that wire fraud is considered a continuing offense and continuing offenses cannot be duplicitous. *Pace*, 314 F.3d at 350. McConnell's argument that the holding of *Pace* does not apply here because the Ninth Circuit was concerned with venue and not duplicity of the wire fraud charge is not persuasive. McConnell fails to explain how this concern with venue over duplicity changes the merits of the *Pace* Court's statutory reading and this Court sees no reason not to follow the Ninth Circuit's precedent as it is required to do.

While Counts I, II, and VIII do list multiple means by which the Defendants could have committed the offense, the Court finds nothing unwarranted about this practice under Fed. R. Crim P. 7(c). All three Counts include the same activities the Defendants allegedly undertook to defraud MNWC of federal funds: travel fraud, receiving travel payments from non-approved trips, authorizing unapproved construction projects, and receiving other unapproved benefits from MNWC. These activities, if proven, describe nothing more to the Court than the one or more means by which the Defendants could have committed the offenses of theft from a program receiving federal funding and wire fraud. If concerns of jury unanimity

11

are warranted, a jury unanimity instruction serves the purpose of curing any potential confusion in a jury verdict, as conceded by McConnell. (Doc. 96-1 at 7).

Finally, McConnell's argument that the scheme alleged in Count I does not contain a unitary fraudulent scheme is premature. McConnell disputes the factual allegations contained in Count I and argues that she was 'hoodwinked' by Lawrence into believing the Las Vegas trip had been approved and that evidence of other allegedly fraudulent activities such as authorizing unapproved construction projects cannot show a single fraudulent scheme. These are factual arguments which the Court is in no position to weigh. As explained above, the United States is within its rights to include the multiple means by which it believes the Defendants committed the various offenses, but it is up to the jury to decide whether those offenses actually occurred or demonstrate a unitary scheme.

For these reasons, McConnell's Motion to Dismiss Counts I, II, and VIII as duplicitous is denied.

### c. Motion to Dismiss Count II for Insufficient Charge

A charge of wire fraud must include the following elements: "(1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud." *United States v. Lindsey*, 850

F.3d 1009, 1013 (9th Cir. 2017) (*quoting United States v. Jinian*, 725 F.3d 954,

960 (9th Cir. 2013). To commit a scheme to defraud, the defendant must employ

"material falsehoods" which are statements that have "a natural tendency to

influence, or [are] capable of influencing, the decision of the decisionmaking body

to which it was addressed." *Id.* (*quoting Neder v. United States*, 527 U.S. 1, 20, 16

(1999)).

McConnell argues that Count II alleging wire fraud fails to sufficiently

allege all required elements—namely, that the Defendants did not engage in

material misrepresentations.

The United States responds that Count II of the superseding indictment does

adequately state all elements of a wire fraud charge and specifically alleges that

McConnell devised a "material scheme and artifice to defraud." (Doc. 53 at 6).

The Court agrees with the United States. To the degree that McConnell

argues that Count II does not allege materiality in the charge of wire fraud, the

language of the superseding indictment proves otherwise. Count II alleges that the

Defendants employed a material scheme to defraud the MNWC, which is all that is

required at this time. Fed. R. Crim. P. 7(c). McConnell's Motion to Dismiss Count

II as legally insufficient is denied.

13

### d. Motion to Dismiss Count VIII for Insufficient Charge

McConnell argues that Count VIII fails to properly include an essential element of the charge of misprision of a felony. Specifically, McConnell asserts that the superseding indictment "does not include the necessary allegations that affirmative steps were taken to conceal the crime of the principal" and fails to specify the alleged unreported felony. (Doc 98-1 at 10-11).

The United States responds that Count VIII complies with all requirements to properly allege a charge of misprision of a felony. It expresses the proper statutory language providing notice of the crime to the Defendants. It also describes the various crimes alleged to have been committed including authorizing double payment for days in service and authorizing unapproved construction projects. The United States argues that the law does not require the Government to cite to specific statutes in charging documents or to include more than a plain, concise, and definite written statement of essential facts under Fed. R. Crim. P. 7(c).

Fed. R. Crim. P. 7(c)(1) states that an indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Under this rule, the indictment is sufficient "if it contains 'the elements

14

of the charged crime in adequate detail to inform the defendant of the charge and to

enable him to plead double jeopardy.'" *United States v. Awad*, 551 F.3d 930, 935

(9th Cir. 2009) (*quoting United States v. Alber*, 56 F.3d 1106, 1111 (9th Cir.

1995)). So long as the indictment conforms to this minimal constitutional standard,

it is irrelevant whether it could have been worded in a more agreeable manner.

*United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000).

Count VIII of the superseding indictment states:

That between, in, or about August 2017, and continuing thereafter
until in or about March 2018, at Lame Deer and in Rosebud County,
in the State and District of Montana, and elsewhere, the defendants,
SHERYL LYNN LAWRENCE, MEREDITH McCONNELL, and
BARBARA MARY DAYCHIEF, having knowledge of the actual
commission of a felony cognizable by a court of the United States,
concealed and did not as soon as possible make known the same to
some judge and other person in civil authority under the United States,
that is, the defendants, SHERYL LYNN LAWRENCE, MEREDITH
McCONNELL, and BARBARA MARY DAYCHIEF, committed and
facilitated travel fraud, received double payments for meals, received
travel payments on non-approved trips, including to Las Vegas,
received, authorized, and obtained double-payment for "days in
service," authorized unapproved construction projects, took and
authorized other benefits that members of the Montana Native
Women's Coalition were not entitled to receive, and approved,
facilitated, covered-up, and did not report such federal criminal
violations, all in violation of 18 U.S.C. § 4.


18 U.S.C. § 4 states:

15

> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

The Court finds that Count VIII follows the statutory language of 18 U.S.C. § 4 and unambiguously sets forth the necessary elements of the offense as to constitute a legally sufficient indictment. *United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985) ("An indictment which tracks the words of the statute charging the offense is sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense."). The indictment names all three defendants and alleges that they each had full knowledge of the commission of a felony, that each defendant failed to expeditiously inform the authorities of the commission of that felony, and that each defendant concealed evidence or knowledge of the felony. The indictment further described the felony/felonies as: "committed and facilitated travel fraud, received double payments for meals, received travel payments on non-approved trips, including to Las Vegas, received, authorized, and obtained double-payment for "days in service," authorized unapproved construction projects, took and authorized other benefits that members of the Montana Native Women's Coalition were not entitled to receive." The Court fails

16

to see how this description does not meet the minimal constitutional standards of providing a plain, concise, and definite statement of the essential facts constituting an offense. Therefore, McConnell's motion to dismiss Count VIII for insufficient charge is denied.

In her reply brief in support of joinder, Defendant Daychief raised an entirely new argument that Count VIII must be dismissed for violation of the defendants' Fifth Amendment rights. (Doc. 118 at 4). Because the argument was not raised in prior briefing, the United States was not afforded an opportunity to respond. The Court recently ordered a response from the United States. (Doc. 131). As such, the Court reserves ruling on this argument until the United States files its response.

### e. Motion to Strike Surplusage

Fed. R. Crim. P. 7(d) provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." Surplusage pertains to prejudicial or inflammatory remarks in an indictment that go beyond a mere description of the elements of a crime and are neither relevant nor material to the charges. *United States v. Jenkins*, 785 F.2d 1387, 1392 (9th Cir. 1986); *United States v. Terrigno*, 838 F.2d 371, 373 (9th Cir. 1988). A district court is charged

with using its discretion to determine whether information included in an indictment is surplusage and should be stricken. *Terrigno*, 838 F.2d at 373. It is the defendant's burden to demonstrate the potentially prejudicial or inflammatory nature of the surplusage. *United States v. Daniel*, 2010 Dist. LEXIS 24331, *11 (C.D. Cal. 2010).

McConnell asserts that it is "massively unfair to attribute the former executive director's criminal liability and criminal acts to Ms. McConnell." (Doc. 99 at 8). It appears that McConnell's argument pertains to the information contained in the superseding indictment about former executive director Toni Plummer-Alvernaz's 2017 fraud conviction. Plummer was originally charged with Count I: Theft from a Program Receiving Federal Funding and Count II: Wire Fraud. Plummer pled guilty to Count I. McConnell now argues that the inclusion of this information is prejudicial and irrelevant to the present charges. McConnell further argues that the inclusion of information about the training McConnell and the other defendants undertook after Plummer's conviction on reporting fraud is similarly superfluous and prejudicial.

The Government responds that the factual allegations were included in the superseding indictment to provide notice to the Defendants and because the factual

18

allegations are relevant to the Defendant's knowledge of the crimes. As examples, the United States explains that McConnell would have known what fraud looks like because of the conviction of the former executive director of the board on which she now sat as the executive director. Additionally, McConnell and the other Defendants undertook training on fraud and how to recognize and report it after Plummer's conviction. The United States argues this evidence is relevant to demonstrate the Defendants' knowledge of what constitutes fraud and knowledge that board members were expected to report fraud when they discovered it. Finally, the United States proposes that any fears of jury confusion will be resolved by a jury instruction informing jurors that the charges and information contained in the indictment are not evidence and cannot be used to prove anything.

The Court agrees with the United States. The information contained in the indictment is relevant to the crimes charged and therefore cannot be stricken as surplusage. The information regarding the training the Defendants received on recognizing and reporting fraud is directly relevant to the knowledge element of the fraud and misprision of a felony charges. McConnell questions whether this training actually represents the MNWC's policies and procedures but that is not the question before the Court. Questions of veracity and fact are best left to the rigors

of trial and cross-examination. The question before the Court here is relevancy and prejudice. In that regard, the factual allegations on the training provided to MNWC members is directly relevant to the crimes charged. McConnell has failed to demonstrate how the prejudicial nature of this information outweighs its relevancy in the superseding indictment.

The information pertaining to Ms. Plummer's conviction for fraud is a closer call between relevancy and prejudice. However, the Court is still not convinced by McConnell's argument that the information's prejudicial value outweighs its relevancy to such a degree as to be stricken. McConnell argues this information will influence the jurors into believing that the MNWC fostered an atmosphere of fraud and it is unfair to include this information because McConnell was not involved in Plummer's investigation or crimes. While these concerns may be valid to some degree, the Court agrees with the Government that a jury instruction is adequate to resolve evidentiary concerns about the information contained in the superseding indictment. McConnell will also have the opportunity at trial to distance herself from the events surrounding Plummer through cross-examination. However, the Court finds the information is relevant to demonstrate McConnell's knowledge of MNWC's past experience with fraud and the reporting requirements

20

when a board member witnesses an individual engaged in fraudulent acts.

McConnell's Motion to Strike Surplusage is therefore denied.

### f.  Motion to Dismiss Count IV for Insufficient Charge and Unconstitutional Statute

McConnell argues that Count IV must be dismissed because it fails to allege a sufficient false claim charge in the superseding indictment. Specifically, the reconciliation form filed by McConnell cannot constitute a false claim under 18 U.S.C. § 287 because it is unclear if the United States can prove that she prepared or signed the form. McConnell also argues that 18 U.S.C. § 287 is unconstitutionally vague as applied in this case because the term "claim" is undefined in the statute, the claim form is unidentified, and because McConnell was not provided sufficient notice what conduct is considered illegal.

The United States responds that McConnell's factual questions are not appropriate for dismissal at this stage because there are no summary judgment procedures in criminal cases. McConnell's factual sufficiency argument is best reserved for trial where the Government has the burden of proving its case, but the charge cannot be dismissed at the indictment stage. The Government also cites to *United States v. Jackson*, 845 F.2d 880 (9th Cir. 1988) in which the Ninth Circuit upheld the constitutionality of 18 U.S.C. § 287.

In *Jackson*, the defendant argued that a form he submitted to the Treasury Department did not constitute a claim under 18 U.S.C. § 287 because the claim language had been removed from the form and the defendant was not attempting to secure additional funds from the government. Instead, the defendant submitted the form to reduce the amount he owed to the government. *Jackson*, 845 F.2d at 881-82. The Ninth Circuit found this argument without merit. The court held "[w]e see no difference between the act of filing a form fraudulently to cause the government to abandon its investigation of an overpayment, and the act of filing a form fraudulently to cause the government to make payment." *Jackson*, 845 F.2d at 882. In so doing, the court emphasized its focus on the substance of the act or transaction: "[s]ubmission of a form to obtain a credit for previously advanced funds is as violative of § 287 as submission of a form to obtain the funds themselves, when the submission is 'false, fictitious, or fraudulent.'" *Id.* The determining factor to be considered is whether the government suffers a monetary loss as a result of the defendant's fraudulent actions. *Id.*

The Court agrees with the United States' position that McConnell's factual arguments are best reserved for trial where McConnell is free to put on evidence for her own defense and to seek to discredit the United States' case. As such,

McConnell's argument that Count IV is charged insufficiently is without merit.

McConnell submitted the form seeking funds from the Office on Violence against

Women for a training trip to Las Vegas. McConnell received a sum of $1826.02

for travel expenses. The United States now alleges that she fraudulently inflated

the cost of the trip by claiming she drove to Las Vegas when she actually flew.

McConnell failed to correct the difference in expenses. As alleged, McConnell

submitted a fraudulent form to the Office on Violence against Women that

ultimately caused the Office to suffer a monetary loss. The Court fails to see how

the reasoning of *Jackson* does not encompass the scenario as laid out in the

superseding indictment. McConnell argues that *Jackson* and its broad holding

should be revisited, but as of now it remains Ninth Circuit precedent which this

Court is obligated to follow.

The Court also finds that McConnell's constitutional attack on 18 U.S.C. §

287 as applied in this case fails as a matter of law. McConnell argues the term

"claim" in the statute is vague in its application here because McConnell did not

fill out a document entitled a "claim" but submitted a reconciliation form. The

Fifth Amendment requires a criminal statute to provide "ordinary people fair notice

of the conduct it punishes." *Johnson v. United* States, 576 U.S. 591, 629 (2015). A

statute too vague to provide this notice is considered void. *Id.*

> 18 U.S.C. § 287 provides:
>
> Whoever makes or presents to any person or officer in the civil,
> military, or naval service of the United States, or to any department or
> agency thereof, any claim upon or against the United States, or any
> department or agency thereof, knowing such claim to be false,
> fictitious, or fraudulent, shall be imprisoned not more than five years
> and shall be subject to a fine in the amount provided in this title.

As noted above, the superseding indictment alleges that McConnell

submitted a reconciliation form she knew contained false information. McConnell

argues that the undefined nature of the term claim in 18 U.S.C. § 287 makes the

statute void in this case because McConnell did not have sufficient notice what

conduct was illegal when she submitted the allegedly false reconciliation form.

The Court finds this argument disingenuous at best. McConnell's own brief cites to

three different sources referencing the lack of a definition of a claim in 18 U.S.C. §

287, yet each of those sources arrives at a definition of claim that would be wholly

applicable to the present situation. The Fourth Circuit Court of Appeals in *U.S. v.*

*Duncan* determined the definition to relate to a payment or claim of property

against the government. 816 F.2d 153, 155 (4th Cir. 1987). The Sixth Circuit Court

24

of Appeals in *United States v. McBride* turned to the False Claims Act and Black's

Law Dictionary for the term's meaning of a monetary demand or a demand for

property. 362 F.3d 360, 371 (6th Cir. 2004). Each of these definitions reflect the

ordinary and natural meaning of the term claim as it appears in 18 U.S.C. § 287.

*See Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995) (holding that an

undefined statutory term should be given its natural, ordinary meaning.) The Court

is not convinced by McConnell's argument that another individual, standing in

McConnell's shoes, would read 18 U.S.C. § 287 and not understand that it

prohibits someone from making a false demand for money or property on the

United States or a department of the United States regardless of what form that

false demand took. Therefore, the Court finds that 18 U.S.C. § 287 is not void for

vagueness as included in the superseding indictment and McConnell's motion to

dismiss is denied.

## III.   CONCLUSION

THEREFORE, IT IS HEREBY ORDERED that Defendant McConnell's

Motion to Sever (Doc. 95) is DENIED. Defendant McConnell's Motion to Dismiss

Count I, II, and III (VIII) (Doc. 96) is DENIED. Defendant McConnell's Motion to

Dismiss Count II (Doc. 97) is DENIED. Defendant McConnell's Motion to

Dismiss Count VIII (Doc. 98) is DENIED. Defendant McConnell's Motion to Strike Surplusage (Doc. 99) is DENIED. Defendant McConnell's Motion to Dismiss Count IV (Doc. 100) is DENIED.

DATED this _5th_ day of November, 2020.

SUSAN P. WATTERS
UNITED STATES DISTRICT JUDGE